# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 05-2866

SHEILA SANCHEZ, on behalf of
   CHILA SANCHEZ,

*Plaintiff-Appellant*,

*v.*

JO ANNE B. BARNHART, Commissioner
   of Social Security,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-537-C—**Barbara B. Crabb**, *Chief Judge*.

_____

ARGUED SEPTEMBER 22, 2006—DECIDED NOVEMBER 7, 2006

_____

Before POSNER, ROVNER, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.  This suit challenges the denial of social security disability benefits to the plaintiff's daughter, 12-year-old Chila Sanchez. Although social security disability benefits are designed for disabled workers, low-income parents can obtain them on behalf of their disabled children. 42 U.S.C. § 1382c(a)(3)(C). The standard rationale for this curious-seeming extension of the benefits program for disabled adults is, as we explained in *Keys v. Barnhart*, 347

F.3d 990, 991 (7th Cir. 2003), that having a disabled child may limit the amount of productive work that the parents can do, inflicting hardship on families of limited means. See also *Encarnacion v. Barnhart*, 331 F.3d 78, 91 (2d Cir. 2003); H.R. Rep. No. 231, 92d Cong., 2d Sess. 147-48 (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5133-34; Marcia K. Meyers, Henry E. Brady & Eva Y. Seto, *Expensive Children in Poor Families: The Intersection of Childhood Disabilities & Welfare* 2, 69 (Pub. Policy Inst. of Cal. 2000). But since disabled children generally do not have a work history, the structure of the disability program for them necessarily differs from that for adults, except in cases in which the child has a "listed impairment," that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to work; the child is treated the same in such a case. Otherwise the question is whether the child is severely limited in functioning in specified areas of life activity such as concentration and communication, which correspond to activities that adults perform at work. Thus "a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990).

To refine the inquiry, we explained in *Keys*, the Social Security Administration has "designate[d] six 'domains' of functioning: acquiring and using information; attending to and completing tasks; interacting with and relating to other people; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A claimant is to be found disabled if he has an 'extreme' limitation in at least one of the domains, or 'marked' limitations in at least two. 20 C.F.R. § 416.926a(d). 'Marked' and 'extreme' limitations in a given domain can be established by standardized test scores

that are two or three standard deviations, respectively, below the mean—that is, either in the lowest 2.5 percent of the distribution or the lowest one-half of 1 percent—provided, however, that the scores are representative of day-to-day functioning. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive, therefore, and the bulk of 20 C.F.R. § 416.926a is devoted to 'general descriptions of each domain,' against which a claimant's functioning may be compared." 347 F.3d at 994.

The plaintiff in our case argues that her daughter has asthma so severe as to constitute a "listed impairment." But she challenges the administrative law judge's contrary finding solely on the ground that he failed to explain it adequately. There is merit to the argument and ordinarily it would require a remand. But in administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision. *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004); *Keys v. Barnhart*, *supra*, 347 F.3d at 994-95; *Save Our Heritage, Inc. v. FAA*, 269 F.3d 49, 61 (1st Cir. 2001). This is such a case. Chila does have asthma, uses a bronchodilator occasionally, and occasionally takes cortisone. For her asthma to rise to the level of a listed impairment, however, there must be medical evidence either of "persistent low-grade wheezing between acute attacks" or of "the absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators." 20 C.F.R. § 404, Subpt. P, App. 1, 103.03C. There is no such evidence, as the district court noted and the Social Security Administration's brief explains at length; the plaintiff's reply brief contests neither the district court's finding nor SSA's explanation. A listed impairment is designed to identify a disabling ailment; and if Chila is disabled it is because of psychological problems, not asthma. Asthma is *physically* disabling. But Chila attends

school, including gym classes, and summer camp, and there is no indication that her asthma interferes with these activities. Apparently she has never used her inhaler in school.

A neuropsychologist, however, diagnosed Chila, who was sexually abused as a small child, as suffering from attention-deficit disorder, anxiety, and "sensory defensiveness"—which means abnormal sensitivity to being touched. He based this diagnosis mainly on an interview and on her mother's description of Celia's behavior—a description that the administrative law judge thought exaggerated.

Neuropsychology is the branch of psychology that specializes in the study of the effect of the brain on psychological phenomena. See *Stedman's Medical Dictionary* 1213 (27th ed. 2000); Raymond J. Corsini & Alan J. Auerbach, *Concise Encyclopedia of Psychology* 606-07 (2d ed. 1996). The neuropsychologist gave Chila tests of memory, intelligence, ability to plan and form concepts, ability to control impulses, and related capabilities. These are the sorts of test that neuropsychologists specialize in giving. The psychologist whom the administrative law judge credited, though he has a Ph.D in clinical psychology, is not a neuropsychologist and had he administered similar tests and interpreted the results differently from the neuropsychologist the administrative law judge would have been skating on thin ice to credit his results over those of the specialist.

But that is not what the clinical psychologist did. He merely pointed out the obvious—that the tests administered by the neuropsychologist had failed to reveal serious psychological problems. The neuropsychologist's reports stated that "formal testing does not reveal any significant

patterns of neurocognitive dysfunction," that Chila has no "straightforward" form of attention-deficit disorder, and that "she is not showing any difficulties with planning, problem solving, utilizing feedback, coping with interference effects, or responding to demands for flexibility." Other parts of the reports indicate that Chila may have serious psychological problems after all, but the overall impression that the administrative law judge was entitled to form, with the aid of the clinical psychologist's explanations, was merely that Chila is not a perfectly well adjusted child. And the neuropsychologist's diagnosis of sensory defensiveness and the like was based in part on a description of Chila's behavior by her mother that the administrative law judge was entitled to and did find to be exaggerated. It was the neuropsychologist who, in relying on the mother, was skating on thin ice.

The administrative law judge was also influenced, and properly so, by the fact that Chila's own testimony, and more important her report cards and other reports of her school performance, depict a normal schoolgirl. She is sometimes difficult or aggressive in school, but that is hardly unusual, and indeed were it not for some of the psychological evidence one would think her rather average despite her unfortunate childhood experience. To be disabled as an adult is to be unable to work, and to be disabled as a child is to be unable to engage in activities, such as completing tasks and relating to other people, that if an adult could not engage in them would disable the adult from working. Those are the "domain" activities. Chila engages in all of them. See *Sullivan v. Zebley*, *supra*, 493 U.S. at 540.

AFFIRMED.

ROVNER, *Circuit Judge*, dissenting. As the majority points out, Chila would be entitled to benefits if she had marked limitations in two functional domains. *See* 20 C.F.R. § 416.926a(d). The administrative law judge here erroneously adopted the opinion of nontreating psychologist Dr. Larry Larrabee, denying that Chila had any marked functional limitations, over the opinion of treating neuropsychologist Dr. Peter Williamson, who opined that Chila had marked limitations in the domains of attending to and completing tasks and interacting and relating with others. Because substantial evidence does not support the ALJ's reasons for crediting Dr. Larrabee's opinion over that of Dr. Williamson, I would remand the case for further evaluation. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

In discussing the relative merits of both doctors' opinions, the majority glosses over the two unsubstantiated reasons that the ALJ gave for ignoring Dr. Williamson's opinion. The ALJ first stated that Dr. Williamson and Chila did not have "a close treatment relationship." But Dr. Williamson evaluated Chila three times over three years, and this "longitudinal picture" of Chila's condition should have entitled Dr. Williamson's opinion to greater weight than that of a nontreating source. *See* 20 C.F.R. § 416.927(d)(2)(i). Second, the ALJ discounted Dr. Williamson's opinion because it was based "primarily on the mother's responses." But this characterization misrepresents the record. In his evaluation report, Dr. Williamson expressly stated that he would treat the mother's responses "very cautiously" because they were "extreme." (A.R. 430.) More importantly, Dr. Williamson did not refer to the mother at all in the pertinent evaluation form in which he opined that Chila has two marked limitations. (Id. at 425-26.)

Nor does the majority acknowledge the ALJ's unsupported reasons for crediting Dr. Larrabee's opinion. The ALJ stated that he accepted Dr. Larrabee's opinion because of "his credentials and his opportunity to review the entire record." But Dr. Larrabee does not have particular credentials that warrant crediting his opinion over Dr. Williamson's, especially since only Dr. Williamson personally evaluated Chila. *See* 20 C.F.R. § 416.927(d)(5). Moreover, Dr. Larrabee's expertise, as he himself acknowledged, was circumscribed by the matter at issue. Even though he testified about the long-term trauma a very young sexual abuse victim would experience, he was unwilling to opine about the effects of abuse on Chila: such an opinion, he conceded on cross-examination, lies "outside of my area of expertise." (Id. at 122, 132.)

The ALJ's decision to rely on Dr. Larrabee's opinion is especially troubling because Dr. Larrabee did not substantiate his conclusions that Chila had no marked limitations. (A.R. 128-31.) When pressed by Chila's representative, Dr. Larrabee cited Dr. Williamson's reports as the basis for his conclusion. (Id. at 131.) But Dr. Williamson's evaluation of Chila's functional limitations differed substantially from Dr. Larrabee's conclusion. Dr. Williamson pointed out, for instance, that Chila had marked limitations in attending to and completing tasks because "[r]ecent testing revealed significant deficits in attention under stressful and demanding conditions." (Id. at 425.) He also noted that Chila had marked limitations in interacting and relating with others because Chila's "anxiety and sensory defensiveness have a substantial impact on her social self regulation." (Id. at 426.) Dr. Larrabee never accounted for these countervailing findings, and substantial evidence therefore does not support the ALJ's decision to credit Dr. Larrabee's

conclusory opinion over Dr. Williamson's well-supported one. *See* 20 C.F.R. § 416.927(d)(3).

Contrary to the majority's conclusion, there is ample record evidence suggesting that Chila's psychological impairments were severe. For example, Chila's psychiatrist noted that Chila frequently experienced anxiety attacks at school, (A.R. 478, 480), and engaged in compulsive behaviors that included picking at her scalp until she had bleeding sores, (id. at 449, 457-58). There is also evidence that Chila's psychological impairments interfered with her ability to interact and relate with others. For example, although the majority believes that Chila's school reports depict "a normal schoolgirl," Chila's most recent school report shows that she "rarely" demonstrated self-control, solved conflicts appropriately, or cooperated with others. (Id. at 266.) A consulting psychiatrist characterized Chila's "social phobia" as "significant." (Id. at 449.) There is also evidence that her impairments limited her ability to attend to and complete tasks. Chila's most recent school report describes her failure to timely complete assignments as "really affecting Chila's progress!" (Id. at 266.) Her psychiatrist noted Chila's "excessive distractibility" and "difficulty following through." (Id. at 456.) Given this record, Chila deserves to have an ALJ decide whether her serious psychological impairments render her disabled for reasons that are supported by substantial evidence.

No. 05-2866                                                                        9

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
