**Carneth LIPKE, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. 06–C–0675–C.**

United States District Court,
W.D. Wisconsin.

July 24, 2007.

Frederick J. Daley, Daley, Debofsky & Bryant, Chicago, IL, for Plaintiff.

Richard D. Humphrey, U.S. Attorney's Office, Madison, WI, for Defendant.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

On May 13, 2004, plaintiff Carneth Lipke filed an application for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. at 42 U.S.C. §§ 416(i), 423(d), alleging that he was disabled as a result of chronic upper back and neck pain, headaches and depression. After the local disability agency twice denied plaintiff's application, plaintiff exercised his right to a *de novo* hearing before the Social Security Administration. On March 8, 2006, an administrative law judge convened a hearing at which plaintiff and a vocational expert testified. In a written decision issued after the hearing, the administrative law judge applied the commissioner's sequential evaluation process and concluded at step four that plaintiff was not disabled because he retained the ability to perform his past work as a

zoning inspector as it is generally performed in the national economy. The administrative law judge also considered the "vocational factors" (plaintiff's age, education and past work experience) and found that even if plaintiff could not perform his past relevant work, he was capable of making a vocational adjustment to a significant number of unskilled jobs existing in the economy and therefore would not be disabled at the fifth step of the process. This decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review.

Plaintiff now seeks judicial review of the commissioner's final decision pursuant to 42 U.S.C. § 405(g). Plaintiff alleges that the decision of the administrative law judge is not supported by substantial evidence because the judge erroneously rejected the opinion of plaintiff's treating physician, overstated plaintiff's activities and failed to consider medication side effects in reaching his conclusion that plaintiff's subjective complaints were not entirely credible, failed to account for limitations resulting from plaintiff's sleep apnea and ignored binding agency regulations in making his determinations at step four and step five regarding plaintiff's ability to perform his past work and other work, respectively. I agree with plaintiff on virtually all counts. Accordingly, the case will be reversed and remanded to the commissioner for further proceedings.

From the administrative record, I make the following findings of fact.

## FACTS

### A. *Background and Medical Evidence*

Plaintiff was 62 years old on the date of the hearing, making him an individual "closely approaching retirement age" under the social security regulations. 20 C.F.R. § 404.1563(e). He has a high school education and training in civil highway technology and land surveying. He has past work experience as an assistant city engineer and municipal inspector for an engineering firm. His last job was as a "zoning inspector" for Dane County, Wisconsin, a job that involved the issuance of zoning permits and to a lesser degree, site inspection.

In September 2002, plaintiff began having pain in his upper back and neck areas. Plaintiff attributed the pain to the heavy plat books he was required to lift frequently in his job as a zoning inspector. Plaintiff sought medical treatment from Dr. Amy Daley, an internist at the Dean Medical Center in Madison, Wisconsin. X-rays of the thoracic and cervical spine showed only mild degenerative changes, MRI scans were normal and blood tests showed no signs of an inflammatory condition. However, on physical examinations, plaintiff had restricted range of motion in his neck because of pain and tenderness in the cervical paraspinal muscles. Dr. Daley prescribed Vicodin and Valium and physical therapy. Although the physical therapist tried various pain relief measures, including cold packs, massage and ultrasound, none of them provided plaintiff with any lasting relief.

On January 20, 2003, plaintiff reported that he was attempting to work two to four hours a day but was still having pain. Dr. Daley asked plaintiff to stay off work for four weeks. She referred plaintiff to Dr. Gronski, a sports medicine specialist, who concluded that plaintiff's pain was myofascial in nature. Dr. Gronski recommended another course of physical therapy. On March 6, 2003, plaintiff reported that he had been doing a little housework but trying not to overexert himself. Dr. Daley indicated that plaintiff should remain off work for another month but could do "light

duty as tolerated" at home. AR 257. Dr. Daley also increased plaintiff's dosage of Prozac, which she had prescribed for plaintiff's depressed mood secondary to his ongoing pain.

On April 10, 2003, plaintiff reported that he was sleeping a lot and taking naps during the day but was trying to decrease his use of the Vicodin. He reported that his mood and coping skills were better and that his back pain was "slightly better." Dr. Daley indicated that plaintiff should remain off work for another month so that he could progress a bit more with his daily activities and reduce his sleep. On May 8, however, plaintiff reported that he still had the upper back and neck pain and continued to struggle to perform activities of daily living. Plaintiff was wearing a TENS unit and reported that he did so almost all the time. He had decreased range of motion in the neck and was tender along the upper back even with light touch. Dr. Daley indicated that referral to a pain clinic would be appropriate because plaintiff was "at a standstill." AR 250. On May 15, 2003, Dr. Daley wrote a note indicating that plaintiff should be off work for an undetermined period of time because of his ongoing pain.

At a follow up with Dr. Gronski on June 16, 2003, plaintiff reported that he walked on a treadmill 15–20 minutes a day and took a half hour walk most evenings. He was able to vacuum his living room and kitchen but felt very tired afterwards. Plaintiff was able to mow his lawn on a riding mower on a limited basis but his wife did most of the mowing. Plaintiff still slept about 12–14 hours per day. Dr. Gronski detected tenderness through the cervical spine and neck muscles and down into the trapezius muscles, and plaintiff still had limited range of motion in his neck. Dr. Gronski reiterated that plaintiff's pain was myofascial and noted that

plaintiff had some features suggesting fibromyalgia. Dr. Gronski suggested the possibility of starting Neurontin and agreed that consultation with a chronic pain clinic was appropriate.

On July 17, 2003, plaintiff underwent a multidisciplinary evaluation at the pain clinic in Watertown, Wisconsin. Plaintiff was found to be markedly deconditioned and in need of aggressive physical therapy as well as cognitive behavioral therapy. Plaintiff was noted to be extremely anxious about his pain and over-reliant on his cervical collar. Although he was found to be a candidate for the program, plaintiff declined to participate because he would have to travel to the clinic three times a week; he requested something closer to home.

On September 15, 2003, plaintiff told Dr. Daley that he continued to struggle with his back and neck pain and reported being depressed. Dr. Daley referred plaintiff to physical therapy for a work hardening program and to the psychiatry clinic.

Dr. Paul Greblo, a psychologist at the Dean Clinic, evaluated plaintiff on October 8, 2003. Plaintiff reported debilitating neck and back pain and limited range of motion in his neck. He said he felt useless and depressed and indicated that he slept 14–15 hours a day, which he attributed to his medications. Dr. Greblo diagnosed a pain disorder and offered plaintiff cognitive behavioral therapy for both his depression and chronic pain. Plaintiff declined the offer and also declined to participate in a chronic pain group.

On December 1, 2003, plaintiff told Dr. Daley that his physical therapy had been going well until he had had to move some fencing, which caused an exacerbation of his symptoms. He reported continued tiredness, stating that he slept more than 10 hours a day. Dr. Daley adjusted plaintiff's medications. Dr. Daley recommended that plaintiff take a basic yoga

class and continue in physical therapy. On December 12, 2003, the physical therapist noted that plaintiff's activities included vacuuming and taking care of the house. Plaintiff was able to vacuum the entire house over a period of three days. Plaintiff walked on a treadmill at least 20–30 minutes per day and did floor exercises. He slept 14–15 hours a day.

Plaintiff continued to attend physical therapy sessions approximately two times a week until March 30, 2004. Therapy consisted of strength and conditioning and light job simulation tasks, including lifting 10 pounds from floor to chest level. Plaintiff was discharged after 20 sessions with little improvement. According to the discharge note, plaintiff remained markedly limited in his ability to carry out household duties and job simulation tasks secondary to neck and upper back pain. AR 162.

In January 2004, plaintiff began seeing Dr. Erik Beaver, a psychologist affiliated with the Watertown Pain Clinic. Plaintiff saw Dr. Beaver for cognitive behavioral therapy on a regular basis until November 2004. On July 21, 2004, Dr. Beaver completed a questionnaire on which he indicated that plaintiff's depression had improved but was not completely gone. He indicated that plaintiff's activities were limited to light housework or yardwork because of pain.

On April 15, 2004, Dr. Daley observed that plaintiff continued to have decreased range of motion in his neck and shoulders. Plaintiff was tender along the shoulders, neck and thighs.

Plaintiff applied for disability insurance benefits on May 11, 2004. That same day, Dr. Daley wrote a letter at plaintiff's request explaining his work restrictions. Dr. Daley indicated that plaintiff was unable to rotate his neck to any significant degree, had limited use of his upper extremities apart from fine motor movements of the hand, could lift only 5 to 10 pounds intermittently, could sit for no longer than 30 minutes at a time and could stand or walk for no more than 30 minutes at a time. On an Estimated Functional Abilities Form completed the same day, Dr. Daley indicated that plaintiff was able to perform sedentary work activity for only four hours a day and would likely need a break every 30 to 60 minutes. Dr. Daley predicted that plaintiff's abilities were not likely to change in less than nine months.

On a daily activities questionnaire submitted in connection with his application, plaintiff indicated that he was unable to work because he was in chronic pain, could not sit or stand for long periods of time and slept excessively. Plaintiff reported that he slept 14–15 hours a day, including afternoon naps, indicating that his pain medication made him tired. Plaintiff reported that his daily activities consisted of cleaning, yoga, taking his cat for a walk and "getting supplies." He said that each of these activities took from a half an hour to an hour. AR 102–104.

On August 12, 2004, a medical consultant for the state disability agency reviewed plaintiff's medical records and determined that plaintiff was able to lift 20 pounds occasionally, lift or carry 10 pounds frequently, sit about 6 hours in an 8–hour workday and stand or walk about 6 hours in an 8–hour workday. A second medical consultant reached this same conclusion after reviewing plaintiff's file on December 10, 2004.

In October 2004, Dr. Daley referred plaintiff to Dr. William Donovan, a pulmonary specialist, for plaintiff's complaints of restless sleep and night waking. A sleep study in February 2005 revealed moderately severe sleep hypopnea, a less severe form of sleep apnea. AR 331. Although

his sleep pattern improved during a second study with use of a breathing machine, plaintiff continued to arouse for no apparent reason. At a follow up with Dr. Donovan, plaintiff reported that he was wearing the breathing machine at home and was able to sleep for 6 hours a night, although he still had periods of tiredness during the day. Dr. Donovan indicated that plaintiff's fatigue might be a side effect of his medications and that pain might be causing the nighttime sleep disturbances.

In a letter to plaintiff's attorney dated November 2, 2005, Dr. Daley stated that in her opinion, plaintiff was unable to return to any gainful employment as a result of his limited tolerance for sitting and standing and his chronic pain, which required sedative medications. Dr. Daley indicated that plaintiff could lift at most 10 pounds occasionally and could stand for no more than 30 minutes before needing a break. AR 312.

### B. *Hearing Testimony*

Plaintiff testified that he could not work on a regular basis because of chronic pain throughout his body that was not relieved by medications. He testified that he could not walk or sit long distances because of pain in his hips, could not stand for long periods because of pain in his feet and had only about 30 percent of normal range of motion in his neck. He said that he had trouble staying awake because of his sleep apnea, although he also suggested that he lay down a lot because of his pain. Plaintiff testified that he took at least six Vicodin tablets a day.

When asked by the administrative law judge how much he thought he could lift, plaintiff responded, "Off and on, probably 20, 25 [pounds]," adding that if he had to, he could probably lift his wife "in an emergency." The administrative law judge then asked this followup question: "Okay that's, I don't want you to hurt yourself,

so, but off and on 20, 25 pounds?" Plaintiff replied, "Right." AR 373.

Plaintiff estimated that he could sit for about 45 minutes to an hour at a time and stand or walk for about 30 to 45 minutes at a time. When questioned by the administrative law judge about his outside activities, plaintiff stated that his only activity was following women's college volleyball, which he and his wife had done for 22 years. Plaintiff stated that he and his wife had attended the playoffs in San Antonio in 2005. They flew to San Antonio and rented a car when they got there.

The administrative law judge called a vocational expert to testify. The expert testified that plaintiff's "prior occupation" was classified by the *Dictionary of Occupational Titles* as a code inspector, which was a skilled job requiring light exertion. As plaintiff performed it, however, the job would be at the "heavy" level of exertion. The expert testified that if plaintiff was able to perform the full range of light work, then he could perform the job of code inspector as defined in the *Dictionary*. When asked by the administrative law judge whether "there [was other] work in the economy for someone with that type of RFC?," the expert replied "yes." He indicated that such a person could work as a photocopy machine operator, office helper, gate guard, x-ray inspector and parking lot attendant, and that such jobs existed in significant numbers in Wisconsin. The expert indicated that all of the jobs he had identified were unskilled, light jobs. The expert testified that a person who required a break every 30 to 60 minutes and could work only four hours a day would not be employable.

### C. *Administrative Law Judge's Decision*

On June 12, 2006, the administrative law judge issued a decision denying plaintiff's

application for disability insurance benefits. Following the commissioner's five-step procedure for evaluating disability claims, *Barnhart v. Thomas,* 540 U.S. 20, 24–25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) (describing evaluation process), the administrative law judge found that plaintiff had not engaged in substantial gainful activity since his alleged onset date (step one); plaintiff had the severe impairments of cervical degenerative disk disease, myofascial pain syndrome and diabetes mellitus (step two); the impairments either singly or in combination did not meet or medically equal any listed impairment (step three); plaintiff was able to perform his past relevant work, which the administrative law judge defined as a code inspector (step four); and in the alternative, even if plaintiff could not return to his past relevant work, there were a significant number of other jobs in the economy that plaintiff could perform (step five).

In reaching his conclusions at steps four and five, the administrative law judge determined that plaintiff had the residual functional capacity to perform light work, which translates into frequent lifting and carrying up to 10 pounds, occasional lifting and carrying up to 20 pounds, sitting 6 hours of an 8–hour work day and standing for 6 hours of an 8–hour work day. The administrative law judge accorded substantial weight to the opinions of the state disability medical consultants and little weight to the opinions of Dr. Daley, as expressed in her letters dated May 11, 2004 and November 2, 2005. The administrative law judge explained that although Dr. Daley had indicated that plaintiff could lift and carry only five to 10 pounds, plaintiff had testified at the hearing that "he could lift and carry up to 20 to 25 pounds." Further, Dr. Daley had not stated the medical justification for her conclusion that plaintiff could lift no more than 10 pounds.

With respect to plaintiff's subjective complaints, the administrative law judge found that plaintiff's statements "concerning the intensity, duration and limiting effects of these symptoms are not supported by the evidence." AR 15. As support for that conclusion, the administrative law judge cited the following:

- On November 14, 2003, plaintiff told his physical therapist that he had assisted in removing and reinstalling a fence and removing two trees from his yard, and had put in a full 8 to 9 hour day;
- On July 6, 2004, plaintiff completed a disability form on which he indicated that he spent his days cleaning the house, doing yoga, taking his cat for walks and running errands; and
- Plaintiff testified that he had followed women's volleyball for over 20 years and had traveled to Texas to watch the playoff games the preceding year.

Earlier in his decision, the administrative law judge emphasized various medical reports that noted that plaintiff's activities had increased and that his pain had become less of a problem for him.

At step four, the administrative law judge found that plaintiff could perform his past relevant work as a code inspector as that job was described in the *Dictionary of Occupational Titles.* However, he also found, at step five, that plaintiff had acquired work skills from his past work that were transferable to other occupations with jobs existing in significant number in the national economy, including photocopy machine operator, office helper, gate guard, x-ray inspector and parking lot attendant.

## OPINION

 Under 42 U.S.C. § 405(g), the commissioner's findings are conclusive if they are supported by "substantial evidence." *Clifford v. Apfel,* 227 F.3d 863,

869 (7th Cir.2000). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In reviewing the commissioner's decision, the court conducts "a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the commissioner's decision. *Clifford,* 227 F.3d at 869. The decision cannot stand if it lacks "an adequate discussion of the issues." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir.2002).

■ "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir.2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. *Id.*; 20 C.F.R. § 404.1527(d)(2). When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. *Id.* These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole, and other factors. 20 C.F.R. § 404.1527(d)(2). An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion. *Id.*

■ Plaintiff makes several grounds for believing that the administrative law judge erred in rejecting the opinion of Dr. Daley as expressed in her letters dated May 2004 and November 2005. (Plaintiff also refers to a letter dated July 30, 2006. Because this letter was not before the administrative law judge but was submitted only to the Appeals Council in connection with plaintiff's request for review, this court may not consider it. *Eads v. Secretary of Department of Health and Human Services,* 983 F.2d 815, 817 (7th Cir.1993).) Some of these grounds are unpersuasive. For example, I am not persuaded that remand is required simply because the administrative law judge failed to discuss each of the factors listed in 20 C.F.R. § 404.1527(d)(2). Also unpersuasive is plaintiff's contention that the administrative law judge should have concluded that plaintiff was overstating his lifting ability when he estimated that he could lift 20 to 25 pounds off and on. Even if there are records to support plaintiff's contention that he sometimes "overdid it" and engaged in activity that caused his symptoms to flare up, the administrative law judge was entitled to credit plaintiff's own estimate of his lifting ability over that of Dr. Daley's.

■ More persuasive is plaintiff's contention that remand is required because the administrative law judge failed to address any of the other aspects of Dr. Daley's opinion, including her opinion that plaintiff was limited in his ability to sit or stand at one time, would require periodic breaks and could not work more than four hours a day. As plaintiff points out, the vocational expert testified that the break requirement and four-hour limitation would preclude all employment.

The administrative law judge cited the opinions of the state agency physicians as support for his conclusion that plaintiff was able to perform the full range of light work. Apart from the lifting restriction, however, the administrative law judge offered no explanation why the agency physicians' assessment of plaintiff's abilities

was more consistent with the evidence than Dr. Daley's.

In *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir.2003), the court explained that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." Although one district court in this circuit has noted that *Gudgel* may no longer be good law after the court's decision in *Hofslien, Patterson v. Barnhart,* 428 F.Supp.2d 869 n. 19 (E.D.Wis. 2006), I respectfully disagree. In *Hofslien,* 439 F.3d at 376, the court merely explained that under the commissioner's treating source rule, 20 C.F.R. § 404.1527(d)(2), a treating physician's opinion is presumed to be controlling only if it is not contradicted by any other substantial evidence in the record. Although the court found that the opinion of a non-treating physician can constitute substantial evidence that rebuts the presumption, nothing in the opinion suggests a retreat from the longstanding rule, expressed in *Gudgel* and other cases, that an administrative law judge must offer good reasons that are grounded in the evidence for rejecting substantial evidence in a claimant's favor. *Accord Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir.2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision") (citation omitted); *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993) (ALJ must sufficiently articulate his assessment of evidence to assure reviewing court that he considered important evidence and to enable court to trace path of ALJ's reasoning); *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984) (in absence of explicit and reasoned rejection of entire line of evidence, remaining evidence is "substantial" only if considered in isolation).

The commissioner contends that the administrative law judge gave more weight to the opinions of the non-examining physicians because they were more consistent with the medical evidence, but the administrative law judge did not cite that reason in his decision. *Steele,* 290 F.3d at 941 ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [the court's] review to the reasons supplied by the ALJ"); *Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir.2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ"). Moreover, even if such reasoning can be inferred, the administrative law judge's sketchy evaluation of the medical evidence fails to build an adequate bridge to his conclusion. The administrative law judge found that the medical evidence showed that plaintiff's back and neck pain "waxed and waned depending upon the claimant's level of activities" and that his "condition was better when he did not overly exert himself." AR 14. Although the medical records support these general findings, the fact that plaintiff was "better" when he was not experiencing a flare-up does not, in itself, show that plaintiff is capable of performing light work. Does "better" mean that plaintiff was able to put in a full day's worth of activity? Or does it mean that he was able to perform a few small tasks around the house, punctuated by rest breaks? None of the medical records cited by the administrative law judge answer this question, for they, too, noted only generally that plaintiff's pain had "improved," that his activity level had "increased" and that he was able to do "more

980

work around the house." In fact, when read in their entirety, the medical records show that although plaintiff's mood did improve with psychotherapy and his pain lessened somewhat after months of treatment and physical therapy, plaintiff's pain never disappeared and he remained quite limited in his activities. Overall, I am unable to conclude that the medical records mentioned by the administrative law judge are *necessarily* inconsistent with Dr. Daley's opinion of plaintiff's limitations.

▪ It's possible that the administrative law judge thought that, insofar as Dr. Daley cited pain as the reason for plaintiff's restrictions, further discussion of Dr. Daley's opinion was unnecessary in light of the administrative law judge's conclusion that plaintiff's subjective complaints of pain were not entirely credible. *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995) (administrative law judge could properly reject portion of physician's report that was based upon plaintiff's own statements of functional restrictions where administrative law judge properly found that plaintiff's subjective statements were not credible). Even under this liberal reading, however, the administrative law judge's decision does not survive scrutiny. The administrative law judge's credibility determination was inadequate. In addition to the previously-described flaws in his evaluation of the medical evidence, the administrative law judge erred by focusing solely on what he perceived were inconsistencies between plaintiff's activity level and his subjective complaints without regard to any of the other factors the commissioner has deemed relevant to credibility, including the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or

has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; and any other factors concerning the individual's functional limitations and restrictions. 20 C.F.R. § 404.1529(c); Social Security Ruling 96–7p. Although an administrative law judge's failure to discuss each and every factor is not necessarily grounds for remand, an administrative law judge may not ignore an entire line of evidence that is contrary to his findings. *Henderson v. Apfel,* 179 F.3d 507, 510 (7th Cir.1999).

▪ In this case, the administrative law judge did not mention any of the evidence that contradicted his decision to discredit plaintiff's subjective complaints of pain and fatigue. He paid little attention to plaintiff's course of treatment and persistent efforts to find relief for his pain, which, in addition to visits with Dr. Daley and referrals to specialists, included numerous physical therapy visits, evaluation by a pain clinic, treatment with a psychotherapist and participation in a yoga class.

▪ The administrative law judge also failed to give adequate consideration to plaintiff's complaints of fatigue and excessive sleep. The only mention of these complaints consisted of a single sentence wherein the administrative law judge found that "[a]lthough [plaintiff] was diagnosed as having sleep apnea in 2005, there is no evidence that this disorder would significantly interfere with plaintiff's ability to perform sustained work activity." AR 13. However, even if there is substantial evidence to support a finding that plaintiff's sleep apnea did not qualify as a severe impairment, 20 C.F.R. § 404.1521 (impairment not severe if it does not significantly limit ability to do basic work activities), the record contains substantial evidence indicating that plaintiff's tiredness was a side effect of his medications. In spite of the numerous references in the

record to plaintiff's daytime drowsiness and his report that his pain medication makes him tired, the administrative law judge did not mention plaintiff's various medications or explore possible side effects in his decision. This was error. *Diaz*, 55 F.3d at 307 (ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning").

As for the supposed inconsistencies on which the administrative law judge pinned his credibility determination, the record fails to provide substantial support for the adverse inferences drawn by the administrative law judge. First, the fact that on one day plaintiff engaged in somewhat strenuous activity does not support a finding that plaintiff was exaggerating his symptoms or that he is otherwise able to work. Plaintiff told his physical therapist and Dr. Daley that after the day involving the fence removal, he had had to increase his medications and reduce his daily activities because of pain for four days afterwards. Absent some indication that plaintiff engaged in such work on a regular basis or that he was able to do so without significant pain, plaintiff's one-time fence removal provides tenuous support for the administrative law judge's credibility determination.

The administrative law judge also thought plaintiff's subjective complaints were inconsistent with his activities as reported on the disability questionnaire, on which plaintiff indicated that on a typical day, he cleaned, did yoga, took the cat for a walk and got supplies. As plaintiff points out, however, plaintiff did yoga and took walks at the recommendation of his doctor, so this activity is not inconsistent with his complaints of pain. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir.2004)

("Since exercise is one of the treatments that doctors have prescribed for Carradine's pain, and she does not claim to be paralyzed, we cannot see how her being able to walk two miles is inconsistent with her suffering severe pain"). Moreover, the limited nature of plaintiff's activities, none of which he did for more than an hour at a time, was not inconsistent with his claim that he was limited in his ability to sit or stand for long periods of time or unable to maintain full time employment, in general. *Id.* at 756 (plaintiff's ability to walk, drive, shop and do housework on occasion insufficient to support finding that plaintiff could work eight hours a day, five consecutive days a week).

Finally, the administrative law judge noted that plaintiff had attended the women's volleyball playoffs in Texas. However, the administrative law judge never explained why he found this activity to be proof that plaintiff must be exaggerating his symptoms. The mere ability to make a single trip, by plane, to attend a spectator sport does not amount to substantial evidence showing that plaintiff can work or that his subjective complaints are incredible. Plaintiff testified this his primary limitations are his inability to sit or stand for long periods of time, his lack of motion in his neck and his tiredness. These limitations are not necessarily inconsistent with traveling by plane to watch a volleyball tournament over the course of one weekend. *Accord Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986) (ability to engage in periodic, restricted travel does not diminish credibility of pain testimony). This is not to say that a claimant's ability to travel can never provide a good reason for the administrative law judge to doubt the veracity of the claimant's allegation that he is unable to work. In this case, however, the administrative law judge did not make sufficiently detailed findings

about plaintiff's travel activities to support his conclusion.

In *Carradine*, 360 F.3d at 755, the court made clear that an administrative law judge may not rely solely on an individual's ability to engage in sporadic physical activities to determine that the individual can work eight hours a day, five days a week. That is precisely what the administrative law judge did here. Accordingly, the administrative law judge's credibility determination was patently wrong. *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir.2005) (adverse credibility determination must be supported by reasons that are not "patently wrong"). It follows that, to the extent the administrative law judge might have rejected Dr. Daley's opinion regarding plaintiff's sitting, standing and work tolerance limitations because it rested on plaintiff's subjective complaints, that determination was patently wrong, too.

Accordingly, this case must be remanded to the commissioner for further proceedings. On remand, the administrative law judge should make a new credibility determination that comports with 20 C.F.R. § 404.1529 and Social Security Ruling 96–7p and that is free of the errors noted in this opinion. The administrative law judge should specifically address plaintiff's complaints of fatigue and excessive sleep in addition to his other subjective complaints. In addition, the administrative law judge should reevaluate Dr. Daley's opinion in accordance with 20 C.F.R. § 404.1527(d) and address all aspects of that opinion, not merely the lifting limitation.

On remand, the administrative law judge should also make new findings regarding plaintiff's past relevant work. Under the commissioner's rulings, a claimant's application may be denied at step four under two scenarios: 1) the claimant retains the capacity to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it; or 2) the claimant retains the capacity to perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *SSR 82–61: Titles II and XVI: Past Relevant Work— The Particular Job or the Occupation as Generally Performed*, available at http://www.ssa.gov/OPHome/rulings/di/02/SSR 82–61–di–02.html (visited July 12, 2007). The administrative law judge found that plaintiff was not disabled at step four under the second scenario, finding that he retained the capacity to perform his past relevant work as generally required by employers throughout the national economy.

Like the vocational expert, the administrative law judge equated plaintiff's job as a zoning inspector to that of a code inspector, a job described in the *Dictionary of Occupational Titles*. As an initial matter, I note that although the administrative law judge cited the *Dictionary's* listing for the job of building inspector, DOT 168.167–030, it is plain from his decision that he was relying on the testimony of the vocational expert, who testified that plaintiff's past work most closely matched the *Dictionary* listing for code inspector. Although the vocational expert did not cite a number, the *Dictionary* contains a listing for "code inspector" at DOT 168.367–018. Accordingly, it appears that the administrative law judge's citation to the DOT listing for building inspector was in error.

The commissioner defends the administrative law judge's job comparison by declaring that the *Dictionary* can be relied upon as a source of information about a claimant's past relevant work as that work is usually performed in the national economy. That the *Dictionary* may be a reli-

able source of job information is true so far as it goes, but it is no answer to plaintiff's argument that his job as a zoning inspector did not require the same tasks and therefore is not the same job as the code inspector job listed in the *Dictionary*. Indeed, the relevant social security ruling recognizes that the *Dictionary* may not always answer the question whether the claimant retains the ability to perform his past job as usually performed in the national economy because not every job has a counterpart in the *Dictionary*. SSR 82–61 ("The Dictionary of Occupational Titles (DOT) can be relied upon—*for jobs that are listed in the DOT*—to define the job as it is usually performed in the national economy" and noting that some "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT") (emphasis added). In such cases, cautions the ruling, "it may be necessary to utilize the services of a vocational specialist or vocational expert." *Id.*

Although in this case the administrative law judge did enlist the services of a vocational expert, the vocational expert relied solely on the *Dictionary* as his source of information concerning plaintiff's past relevant work as usually performed in the national economy. Thus, the expert's testimony offers no better information about the requirements of "zoning inspector" jobs than that offered by the *Dictionary*. Plaintiff makes a persuasive argument that the job of code inspector, as described in the *Dictionary*, requires the performance of significantly different tasks, including the entry of dwellings and inspection for compliance with building and health codes, from those performed by plaintiff in his job as a zoning inspector. The commissioner has not offered any evidence to the contrary. Accordingly, on remand, the administrative law judge should develop a better record in order to determine wheth-

er plaintiff's past work adequately corresponds to any job described in the *Dictionary* before relying on the *Dictionary* as evidence that plaintiff is able to perform his past relevant work as generally performed in the national economy.

■ Finally, should the evaluation process on remand reach step five, the administrative law judge should take care to properly apply the commissioner's rulings regarding the transferability of skills. The commissioner's Medical–Vocational Rules (known as "the grids") provide that a claimant of plaintiff's age (60–64, defined as "closely approaching retirement age"), who is limited to light work is disabled unless the claimant has skills acquired from previous work experience that are transferable to skilled or semiskilled work. 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rules 202.06 and 202.07. Further, to make a finding that the skills are "transferable," for a person of plaintiff's age "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R., Pt. 404, Subpt. P, App. 2, 202.00(f). Relying on the vocational expert's testimony, the administrative law judge found that plaintiff had transferable skills. However, no testimony was offered and no finding was made concerning the degree of vocational adjustment required. Contrary to the commissioner's position, this finding is mandated by the regulations. Further, all the jobs identified by the vocational expert were unskilled jobs. If, as the vocational expert's testimony suggests, there are not a significant number of skilled or semiskilled jobs in the light exertional category to which plaintiff's skills could be transferred, then plaintiff would be disabled under the grids.

### ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue denying plain-

tiff Carneth Lipke's application for disability insurance benefits is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this opinion.

The clerk of court is directed to enter judgment for plaintiff.