In the

# United States Court of Appeals
### For the Seventh Circuit

No. 03-1439

CURTIS D. GUDGEL,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. NA 02-61-C-B/H—**Sarah Evans Barker**, *Judge.*

SUBMITTED JULY 8, 2003—DECIDED SEPTEMBER 26, 2003

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Curtis D. Gudgel applied for Social Security Disability Insurance Benefits ("DIB") in January 2000, claiming that he was disabled because of bone deterioration in his knees, arthritis throughout his body, a pinched nerve in his left hand, and chronic bronchitis. Gudgel's claim was denied initially, upon reconsideration, and after a hearing before an administrative law judge. The Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner of Social Security. The district court affirmed, and Gudgel now appeals. Because the ALJ's decision is not supported by substantial evidence, we vacate the judgment of the district court and remand.

Gudgel, who was 56 years old at the time of the ALJ's decision, has a GED and served in the military. He worked as a service manager mechanic from 1977 until 1989. From 1989 until 1995, he was self-employed and did contract work for Pepsi-Cola maintaining their trucks. After 1995 Gudgel performed intermittent yard work for friends and neighbors as his only source of income. Gudgel did not work after June 1998.

Gudgel testified at the administrative hearing that in 1989 he began experiencing generalized weakness and fatigue that progressively worsened until he could no longer work on a regular basis. Gudgel's complaints included pain from aching joints, muscle ache, and overall weakness. Throughout the mid- and late-1990s, the doctors at the Veteran's Administration hospital ran numerous diagnostic tests on Gudgel's knees, hips, back and shoulders, but could not determine the cause of his symptoms. Gudgel's family physician, Dr. Koopman, also attempted to determine the cause of Gudgel's pain. While examining him from 1999 through 2001, Dr. Koopman considered several different conditions including arthritis, fibromyalgia, and depression, but rejected each because he could not support any diagnosis with medical evidence.

Ultimately, in mid-2001, Dr. Koopman diagnosed Gudgel with post-polio syndrome. The symptoms of this condition, which can develop anywhere from 10 to 40 years after recovery from polio, include muscle and joint pain, muscle weakness and muscle atrophy. *Attorneys' Dictionary of Medicine and Word Finder* 393 (J.E. Schmidt ed., 2002). Dr. Koopman had not considered post-polio syndrome previously because Gudgel did not inform him until April 2001 that he had suffered from polio as a child.

Dr. Koopman referred Gudgel to a neurologist for further testing. The neurologist, Dr. Baker, performed several tests to determine the strength of Gudgel's muscles

and possible sources of weakness. In a motor exam, Dr. Baker found that Gudgel had "diffuse weakness" in his "hip and shoulder" area and reported that "[i]t does appear to be true weakness." Dr. Baker found the test results to be consistent with post-polio syndrome, but stated that "[t]he only way to diagnose this is with an EMG."

On May 10, Dr. Baker conducted an EMG to test Gudgel's nerve responses and confirm whether he suffered from post-polio syndrome. Based on the test results, Dr. Baker concluded that "[t]here are diffuse scattered chronic neurogenic changes consistent with the diagnosis of post-polio syndrome or other anterior horn cell disease." Dr. Baker listed post-polio syndrome as his diagnosis, to which Dr. Koopman—upon receiving Dr. Baker's report—concurred. Dr. Baker examined Gudgel once more the following month and reaffirmed his assessment: Gudgel's "EMG was consistent with some neurogenic changes consistent with post-polio syndrome."

During the administrative hearing in November 2001, the ALJ questioned the state's medical expert, Dr. Hutson, about the post-polio syndrome diagnosis. The ALJ's line of questioning reflected concern that Dr. Baker's report did not support the diagnosis:

Q: [Dr. Baker] didn't actually say it was Post Polio, but he said that the findings were, you know, I think, I think the words that he used were consistent with Post Polio.

A: Yes.

Q: So, which means it could be, but, but is that, is that, does that pass in medical circles as a diagnosis, a formal diagnosis in findings?

A: Not to my knowledge, Your Honor.

Q: Okay.

Dr. Hutson testified that the records provided by Dr. Baker were insufficient to support a diagnosis. Dr. Hutson acknowledged that Dr. Baker's physical examination report showed "diffuse weakness, especially of the proximal muscles of the hip and shoulder girdles," and that those findings supported Gudgel's claims of weakness. But Dr. Hutson also pointed out that the EMG results did not show muscle atrophy that, in his view, would typically accompany post-polio syndrome: "[Dr. Baker] doesn't come up with any specific findings here as far as atrophy or something that polio may have invaded." Dr. Hutson was less conclusive about the ultimate diagnosis: "we may be dealing with something secondary to polio here, but we may not. This may not have nothing [sic] to do with polio at all, since it's not very well documented except by his history."

Dr. Hutson testified that he thought that the results of Dr. Baker's physical examination of Gudgel were more instructive than the EMG results. Dr. Hutson stated that Dr. Baker's "clinical findings certainly didn't seem to go along with what those findings were in my opinion on the EMG." Dr. Hutson testified that "[u]sually when muscles become paralyzed by polio, they become atrophy [sic] and they're almost nonfunctional, the basic polio disease. They become very spindly." When Gudgel's attorney questioned Dr. Hutson about the relationship between the EMG results and Dr. Baker's clinical findings, Dr. Hutson replied, "I'm just suggesting that the clinical findings of examining the man, I think clinically are more important than what you find when you stick a needle down inside muscles and look at [sic]."

In considering Gudgel's application for DIB, the ALJ followed the five-step analysis set forth in 20 C.F.R. §404.1520 and determined that Gudgel met the first step—he had been unemployed since 1998—but failed to meet the second step—that he suffered from a severe

impairment or combination of impairments. The ALJ determined that Gudgel had not shown that his complaints of pain and weakness were supported by evidence in the record.

Relying on Dr. Hutson's testimony, the ALJ rejected the diagnosis of post-polio syndrome because "the evidence of record simply fails to support the conclusion of Dr. Koopman that the claimant's subjective complaints were attributable to post-polio syndrome during the period prior to the expiration of his insured status." The ALJ did not credit Gudgel's testimony about his pain and muscle weakness because "his allegations were not reasonably consistent with the medical evidence." The ALJ noted, for instance, that Gudgel damaged his credibility "when he acknowledged that he normally did not use the wheelchair in which he appeared at the hearing."

Our review of the Social Security Administration's decision to deny disability benefits is limited to determining whether the decision "is supported by substantial evidence" in the record. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (internal quotations omitted). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2).

Gudgel contends that the ALJ improperly credited Dr. Hutson's testimony over the medical opinion of Drs. Baker

and Koopman. Gudgel argues generally that the ALJ improperly rejected his treating physicians' opinions without finding contradictory evidence in the record. Gudgel also argues that the ALJ should not have rejected Dr. Baker's opinion without first allowing him to provide additional evidence to support the post-polio diagnosis.

An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice. *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002). Dr. Baker, a doctor trained in treating neurological disorders such as post-polio syndrome, had the opportunity to physically examine Gudgel on three occasions and to run a battery of tests on him. After conducting these examinations, Dr. Baker concluded that both clinical and diagnostic results supported the diagnosis. The ALJ did not explain how the evidence in the record contradicts Dr. Baker's diagnosis of post-polio syndrome. *See Clifford*, 227 F.3d at 870-71 (remanding for ALJ to reevaluate whether treating physician's findings of disabling symptoms were entitled to controlling weight, where ALJ did not adequately explain why those findings were necessarily inconsistent with other medical evidence of record).

Without examining Gudgel, Dr. Hutson testified that he disagreed with Dr. Baker's assessment of Gudgel's condition. Dr. Hutson, however, failed to identify any inconsistency between the post-polio diagnosis and the medical record, except for his unsupported opinion that Gudgel lacked the muscle atrophy that needed to accompany post-polio syndrome. Moreover, Dr. Hutson's assertion about the absence of atrophy is questionable: a year before Gudgel visited Dr. Baker, he was treated by a Dr. Gallagher, who reported some muscle atrophy in the web spaces of Gudgel's hand. Neither the ALJ's ruling nor Dr. Hutson's opinion addressed this finding of muscle

atrophy. In addition, Dr. Hutson did not rule out post-polio syndrome, acknowledging that "we may be dealing with something secondary to polio here, but we may not." Such an inconclusive opinion cannot be a proper basis to reject a treating physician's diagnosis that is supported by test results and consistent with the claimant's subjective symptoms.

The judgment of the district court is VACATED and the case is REMANDED to the agency for further proceedings.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*