NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 22, 2007
Decided June 27, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3868

| | |
|---|---|
| JOHN M. KASBERGER,<br>　　　　　*Plaintiff-Appellant,*<br><br>　　　*v.*<br><br>MICHAEL J. ASTRUE,<br>Commissioner,<br>　　　　　*Defendant-Appellee.* | Appeal from the United States<br>District Court for the Western<br>District of Wisconsin.<br><br>No. 05 C 638<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

## O R D E R

John Kasberger applied for Supplemental Security Income in 2003 at age 20 based on his diagnoses of attention-deficit/hyperactivity disorder, panic disorder with agoraphobia, social phobia disorder, and obsessive-compulsive disorder. His application was denied by the Social Security Administration and again by an administrative law judge. Kasberger filed a civil action in the district court, arguing that he is presumptively disabled because he meets a regulation's definition of anxiety disorder, and that he cannot perform any work because of his condition. The district court accepted a magistrate judge's thorough report and recommendation to deny relief, and this appeal followed. Because the ALJ's

decision is supported by substantial evidence, we affirm.

## I. BACKGROUND

According to Kasberger's testimony and the testimony of his mother before the ALJ, he spends most of his time in his room using the computer or playing with his dog. Until recently he was active in motocross racing and liked to spend his spare time tinkering with his motorbike, but he has largely given up those activities. He now leaves the house roughly once a week, usually with his mother, whom he occasionally drives to work and accompanies to the grocery store. His remaining hobbies include photography and visiting ruins and abandoned buildings; he also has a part-time job mowing the lawn of a nearby restaurant. Kasberger was educated to the eighth grade, largely in special educational settings, and from then on was home schooled. During a school field trip at one point, he was kicked by another student and sustained serious injuries; he was taking the medication Ritalin at the time, and blames the drug for his inability to defend himself. In recent years, he studied for the GED exam and performed well in various subjects but stopped short of completing the course.

The medical evidence in the record includes the treatment notes and findings of five experts, all of whom agree on the diagnoses of ADHD, panic disorder with agoraphobia, social phobia disorder, and OCD. Kasberger's general practitioner, Dr. Howard Spegman, noted that Kasberger has difficulty interacting with other people and frequently has panic attacks when out in public. He is also highly particular about his appearance and the food he eats. Dr. Spegman tried prescribing several different medications, including Efflexor, Zoloft, Paxil, and BuSpar, but Kasberger either found them unhelpful or refused to try them for fear that they would "mess me up." Dr. Spegman certified for the Kasberger family's insurance purposes that Kasberger was "disabled," but refused to fill out a mental impairment questionnaire in support of Kasberger's SSI application, stating that he was not a psychologist or psychiatrist, and noting that Kasberger "had an evaluation rather extensive [sic] by Harlan R. Heinz, Ph.D. of Heinz Psychological Services, and I feel that this individual would be best qualified to fill out this mental impairment questionnaire in its entirety."

Dr. Heinz is a private practitioner who examined Kasberger in June 2003 at the request of the Wisconsin state disability agency. Dr. Heinz performed a "Mental Status Exam," testing Kasberger's memory, cognitive abilities, concentration, and attention. He concluded his five-page report by stating that Kasberger's "ability to relate to his supervisor or co-worker would be poor. Level of attention and concentration appeared average. Pace of work would likely be average. Ability to cope with stress and change is poor." In June and October 2003, two psychologists working for the Wisconsin disability agency—Dr. Joan Warrior and Dr. Roger Rattan—reviewed Kasberger's medical file; Dr. Warrior completed a Mental Residual Functional Capacity Assessment, and Dr. Rattan reviewed the

assessment and concurred with Dr. Warrior's findings. They analyzed Kasberger's file and concluded that while he has serious limitations in maintaining social functioning, he does not have other marked limitations and hence is not disabled. The fifth doctor was an independent psychologist, Dr. Michael Lace, who observed Kasberger's testimony at the hearing, briefly questioned him, and then opined that Kasberger suffers from a presumptively disabling anxiety disorder under the Social Security regulations.

After the ALJ concluded that Kasberger was not disabled, Kasberger filed this suit under 42 U.S.C. § 405(g). When his claim was rejected, he appealed.

## II. ANALYSIS

Kasberger challenges the ALJ's findings—which we review directly, without deference to the district court, *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)—at steps three and five of the five-step sequential analysis for determining whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ held that Kasberger was not performing substantial gainful activity (step one), that he had a severe mental impairment (step two), that his impairment did not meet or equal one of the regulations' listings for presumptively disabling impairments (step three), that he had no past relevant work experience (step four), and that he retained the ability to perform some work (step five). We will affirm the ALJ's conclusions so long as they are supported by substantial evidence, meaning evidence that a reasonable mind might accept as sufficient. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

At step three, Kasberger argues that his condition qualifies as an "anxiety related disorder" that is presumptively disabling. *See* 20 C.F.R. § 404.1525(c); *id.* pt. 404, subpt. P, app. 1, § 12.06. In order to meet the listing, he must show that he satisfies the criteria of both § 12.06A and B; it is undisputed that he meets section A. Under § 12.06B, he must show two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."

Kasberger argues that he has marked limitations in social functioning and in concentration, persistence, and pace. The ALJ agreed as to the former, but not the latter, noting that although Dr. Lace testified that Kasberger had marked limitations with concentration, persistence, or pace, this finding was at odds with other medical evidence in the record. The two state consultants who reviewed Kasberger's file found no limitations in this area—but their views hold less weight since they did not examine Kasberger, 20 C.F.R. § 416.927(d)(1), or even observe him, as Dr. Lace did at the hearing. Nevertheless, Dr. Heinz, the only psychologist who actually examined Kasberger, also found less than marked limitations as to concentration, persistence, and pace. Dr. Heinz tested Kasberger on the exact types of memory and intelligence indicators that the regulations specify for evaluating

concentration, persistence, and pace, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C3, and concluded that Kasberger had the "necessary attention and concentration for the task at hand," that his "[l]evel of attention and concentration appeared average," and that his "[p]ace of work would likely be average."

Kasberger argues that the ALJ "played doctor" by favoring Dr. Heinz's conclusions over Dr. Lace's. We cannot agree. The ALJ did exactly what she was supposed to do when presented with competing medical evidence: she evaluated it and favored the more persuasive evidence, namely the evidence given by the examining psychologist. *See id.* § 416.927(d)(1); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (per curiam). Kasberger also contends that Dr. Lace's testimony was inherently stronger because Dr. Lace had access to Kasberger's most recent medical records through 2004, whereas Dr. Heinz evaluated Kasberger in June 2003. But the ALJ was not compelled to find that the most current evidence was the most probative evidence. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Kasberger has not explained how his abilities as to concentration, persistence, and pace changed after his exam with Dr. Heinz. Kasberger's general practitioner, Dr. Spegman, observed once in treatment notes in February 2004 that Kasberger has "poor concentration skills," but did not elaborate on this comment in any way. Moreover, Dr. Spegman is not a specialist like Dr. Heinz, so his views on this matter carry less weight, *see* 20 C.F.R. § 416.927(d)(5)—a point that Dr. Spegman himself seemed to acknowledge when he refused to fill out a mental impairment questionnaire and referred Kasberger's lawyer to Dr. Heinz.

In sum, substantial evidence supports the ALJ's conclusion that Kasberger was not markedly limited as to concentration, persistence, and pace, and that he therefore is not presumptively disabled at step three of the analysis.

Kasberger also argues that the ALJ erred at step five in calculating his residual functional capacity (RFC)—the work he can still perform despite his limitations—and in posing a hypothetical question to the vocational expert based on the RFC. Both the RFC and the hypothetical must account for all of the plaintiff's medically determinable impairments. 20 C.F.R. § 404.1545(a); *Young*, 362 F.3d at 1002–03. Kasberger contends that the RFC didn't reflect his limitations as to concentration, persistence, or pace, but the RFC specifies that Kasberger can only perform "minimal industry standards for maintaining pace and persistence." The ALJ therefore incorporated these limits to as great an extent possible without finding Kasberger presumptively disabled. Kasberger argues that the ALJ did not include limitations on his ability to work without interruptions or mention his need to take breaks, but again, the RFC covered these points by specifying "short breaks to compose himself with no public contact." Finally, Kasberger contends that the ALJ wrongfully excluded any consideration of his difficulties with attending work regularly and punctually. But the medical evidence suggesting such a limitation was thin, so the ALJ did not need to incorporate it into the RFC. *See Haynes v.*

*Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005). Aside from the state consultant, who checked a box on the mental RFC suggesting that this could potentially be a problem for Kasberger, the only doctor who discussed the issue was Dr. Lace, who stated at the hearing that while maintaining attendance could be difficult for Kasberger, working in a supportive environment and not too far from home might alleviate these concerns. The ALJ was not required to conclude from this evidence that Kasberger was unable to work regularly or to show up on time—limits which would essentially prevent him from working at all.

### III.  CONCLUSION

It is beyond dispute that Mr. Kasberger is afflicted by serious and challenging mental impairments. The case before the ALJ could have plausibly come out the other way. Yet that in itself is not enough for us to upset the ALJ's decision, because the substantial evidence standard carries with it "a zone of choice within which the decisionmakers can go either way, without interference from the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

AFFIRMED.