In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-1116

JAMIE L. ADAIRE,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social
Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:11-cv-03149-SEM-BGC — **Sue E. Myerscough**, *Judge.*

SUBMITTED JANUARY 20, 2015 — DECIDED FEBRUARY 18, 2015

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* This is an appeal by an applicant
for social security disability benefits. The district court up-
held the Social Security Administration's denial of the bene-
fits sought.

When the applicant was 15 years old, rods (called "Har-
rington rods") were inserted into his spine to correct a

57-degree curvature of the spine caused by scoliosis. Any curvature greater than 50 degrees is considered severe. The rods were partially effective. Although they greatly reduced the curvature of his spine (to 15 degrees), he developed—whether despite or because of the rods—chronic back pains. He turned out also to have cognitive difficulties, though they would not have been related to his scoliosis.

At age 20 he was determined to be eligible for social security disability benefits, but shortly afterward he obtained a job at a nonprofit organization called SPARC, Inc., which serves people with intellectual and developmental disabilities. He drove clients of the organization to and from appointments, helped them with cooking and cleaning, and performed clerical tasks. On the basis of this employment the Social Security Administration determined in 1999 (when the applicant was 32) that he was not disabled—indeed had not been disabled for the past eight years. The Social Security Administration tried to recover the $65,000 that it had paid him in benefits for those years; their attempt led him to declare bankruptcy.

Three years after he was found not to be disabled, SPARC fired him because he couldn't keep up with the demands of the job, and two years after that he reapplied for social security disability benefits. Several physicians and mental-health professionals examined him and diagnosed a variety of ailments: chronic back pain; cubital tunnel syndrome (also known as ulnar neuropathy) caused by increased pressure on the ulnar nerve, which passes close to the skin's surface near the elbow (the pressure causes severe pain); further pain caused by corrective surgery on the afflicted elbow; a somatoform disorder (a mental condition

that causes pain that has no known physical cause); plus de-pression, anxiety, panic attacks, agoraphobia, low intelli-gence, dizziness, migraine headaches, and deficient short-term memory. The applicant and his father testified to addi-tional medical and psychiatric problems that afflict the ap-plicant, such as sleeplessness, loss of balance, blurred vision, and abdominal pain.

Nevertheless the administrative law judge (Barbara J. Welsch) concluded that the applicant was capable of doing unskilled light work of a routine and repetitive character and therefore was not disabled. She based this surprising conclusion—surprising in light of the array of medical prob-lems that we just enumerated—in part on written statements by one physician that the applicant had exhibited "near normal function when observed after he left our office" and by another that during the examination the applicant was seen to be able to move around "with ease and had a normal gait" and that he might be "having an exaggerated pain re-sponse." The administrative law judge discounted the opin-ions of both a physician and a therapist that the applicant suffers from panic attacks, because they had based these opinions on the applicant's say so; they had not "witnessed [his] panic attacks." She discounted another physician's opinions because "they are not supported by medical find-ings but appear to depend almost exclusively on the claim-ant's subjective statements and subjective presentation ra-ther than on objective medi[c]al findings" and also because the physician was "apparently sympathetic" to the appli-cant. And finally she reasoned that if the applicant's account of his ailments were true he "would be seeking treatment for his extreme symptoms" and also would not have been "able

to take care of his children." (His girlfriend, the children's mother, works; he stays home.)

The administrative law judge's opinion is riddled with errors. Indeed, no criticism that she made of the evidence presented by the applicant and the numerous professionals who had evaluated him was supported by the record. Her principal error, which alone would compel reversal, was the recurrent error made by the Social Security Administration's administrative law judges, and noted in many of our cases, of discounting pain testimony that can't be attributed to "objective" injuries or illnesses—the kind of injuries and illnesses revealed by x-rays. See *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014); *Myles v. Astrue,* 582 F.3d 672, 676–77 (7th Cir. 2009); *Johnson v. Barnhart,* 449 F.3d 804, 806 (7th Cir. 2006); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). The Administration's own regulation states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96–7p(4).

Not realizing that pain can be real and intense yet its cause not be discernible by medical tests or examinations, the administrative law judge repeatedly intoned the distinction between "subjective" and "objective" evidence of pain, the former being testimony of the applicant. What makes the error in this case well-nigh incomprehensible is that there *was* "objective" evidence of pain—plenty of objective evidence: the damaged ulnar nerve, loss of forearm muscle, and the pain caused by the corrective elbow surgery, all on his right arm (and all the result of his cubital tunnel syndrome),

and the severe back pains caused by his scoliosis and quite possibly by the Harrington rods as well, which are no longer an approved method of treating scoliosis because they can cause a painful back condition—which could be the source of Adaire's back pains—called "flatback syndrome." Virginia Spine Institute, "Flat Back Syndrome," www.spinemd. com/symptoms-conditions/flat-back-syndrome (visited Feb. 15, 2015). After Adaire's elbow surgery, the surgeon who had performed it wrote that

> the diagnosis of severe cubital tunnel syndrome was confirmed. The segment of the right ulnar nerve contained beneath the space between the medial condyle and the olecranon of the right elbow, was very compressed, thin. This was crossed by very fibrous, thick, hard fascia covering the groove of the ulnar nerve at the elbow. The segment of the ulnar nerve that was markedly compressed measured approximately 1 1/2 inch in length. Proximal to the cubital tunnel, the right ulnar nerve was slightly enlarged, was thicker than normal due to chronic edema and fibrosis … .

No surprise that Adaire has severe pain in his right arm.

As for the administrative law judge's other findings adverse to the applicant:

She said: "The claimant did not present himself with such extreme limitations when he did not know he was being observed. … [A doctor] noted 'near normal function when observed after he left our office.'" The doctor's report does *not* state that the applicant didn't know he was being observed. And the quotation from the report is very puzzling. Are we to assume that the doctor or one of his staff

followed the applicant out of the office in order to conduct as it were a supplemental examination? That doesn't seem remotely plausible. Anyway, far from suggesting that Adaire was faking his pain this doctor diagnosed him as suffering from cervical stenosis (a narrowing of the spinal canal that pinches the spinal cord) or a herniated disc, either being a likely cause of pain.

The administrative law judge said that Adaire was seen to be able to move around "with ease and had a normal gait." In other words, he does not limp. She didn't explain why, if the applicant's evidence of pain were truthful, it would imply that he limps.

She thought that the doctor who reported that Adair might be "having an exaggerated pain response" was accusing him of malingering. Not so. The quoted expression is medical jargon for a patient's experiencing more pain than his purely physical problems (spine and right arm and hand, in Adaire's case) would be expected to cause.

She remarked that a psychologist and a therapist who testified that the applicant suffers from panic attacks had not "witnessed [his] panic attacks." That was no basis for disbelieving that he experiences panic attacks. He said he did, the psychologist and the therapist believed him, and the administrative law judge had no basis for disbelieving them. The logic of her remark is that *nothing* an applicant says should be believed; disability determinations should be based entirely on the results of medical tests. Such a rule would flout the Social Security Administration's regulation that we quoted earlier.

One examining physician's opinions were to be disbelieved, the administrative law judge wrote, because "they are not supported by medical findings but appear to depend almost exclusively on the claimant's subjective statements and subjective presentation rather than on objective medi[c]al findings" and also because this physician was "apparently sympathetic" to the applicant. The first quoted passage repeats the fundamental error that "subjective" statements are to be given zero weight and the second passage is radically incomplete, since the administrative law judge neither explained why she thought the physician was "apparently sympathetic" nor why she thought that, if so, he must have given false evidence.

She said that if Adaire's account of his ailments were true, he "would be seeking treatment for his extreme symptoms" and would not have been "able to take care of his children." In fact he sought and received treatment almost continuously and testified without contradiction that he is incapable of taking more than limited, occasional care of his children. He lives with his father, who apparently does most of the child care during the day while the applicant's girlfriend is at work.

The judgment of the district court is reversed and the case remanded with directions to vacate the decision of the Social Security Administration and remand the matter to the Administration.

REVERSED AND REMANDED, WITH DIRECTIONS.