**Erik S. ISRAEL, Plaintiff–Appellant,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant–Appellee.**

No. 15-3220

United States Court of Appeals, Seventh Circuit.

Argued September 8, 2016

Decided October 21, 2016

Barry Schultz, LAW OFFICES OF BARRY A. SCHULTZ, P.C., Evanston, IL, for Plaintiff–Appellant.

Shefali Baltz, SOCIAL SECURITY ADMINISTRATION, Chicago, IL, Brian E. Pawlak, OFFICE OF THE UNITED STATES ATTORNEY, Milwaukee, WI, for Defendant–Appellee.

Before FLAUM, ROVNER, and SYKES, Circuit Judges.

ROVNER, Circuit Judge.

Erik Israel applied for Social Security disability benefits in 2007, and diligently pursued his claim through administrative review. After many years of review, error and delay, the Acting Commissioner of the Social Security Administration (hereafter "Commissioner" or "Agency") issued a final decision denying his claim. Israel filed

suit in the district court to challenge that decision. The Commissioner conceded in the district court that her decision was not supported by substantial evidence and requested remand to conduct additional proceedings. Israel, frustrated with years of delay, sought a direct award of benefits. The district court remanded the case to the Agency for additional proceedings because the record, as it stands, does not compel a finding of disability. *Israel v. Colvin*, No. 14–CV–1155, slip op. at 6–7 (E.D. Wisc. Aug. 28, 2015). Because the district court did not abuse its discretion in ordering a remand, we affirm. On remand, the Agency should expedite proceedings so that the matter may be resolved once and for all.

## I.

In 2001, Israel injured his back while digging posts for a porch. He continued to work while receiving various treatments but his pain worsened and he stopped working in February 2003. Later that year, he underwent a lumbar laminectomy and diskectomy.[1] The surgery did not resolve his pain and two surgeons determined that further surgery was not an option. Under the care of various doctors and specialists, Israel tried physical therapy, transcutaneous electrical nerve stimulation (also called "TENS"),[2] a dorsal column stimulator,[3] epidural injections,[4] narcotic pain medications including Methadone and morphine, lidocaine patches to block nerves from sending pain signals, a muscle relaxer, an antidepressant known to help with chronic pain, and drugs used for nerve pain. Israel, who has been diagnosed with lumbar radiculopathy[5] and post-laminectomy pain syndrome (also called Failed Back Surgery Syndrome), continues to experience severely limiting pain despite these treatments. His doctor sought approval from his insurance company to implement an "intrathecal drug delivery system," a pain pump that delivers medication directly to the spinal cord. Despite repeated requests, however, Israel's insurer has refused to cover the cost of the device. According to Israel, he spends much of his day trying to manage his pain by elevat-

1.  A laminectomy is a surgical procedure to remove the lamina, a part of the bone that makes up a vertebra in the spine, in order to take pressure off of spinal nerves or the spinal cord. https://medlineplus.gov/ency/article/007389.htm (last visited October 11, 2016). Diskectomy is surgery to remove all or part of a disk, the cushion that helps support part of the spinal column and separate vertebrae. https://medlineplus.gov/ency/article/007250.htm. All websites referenced in this opinion were last visited October 11, 2016. Throughout the record, different sources uses different spellings for the cushion separating vertebrae, some adopting "disk" and others "disc." We will use "disk" unless we are quoting a source that uses the alternate spelling.

2.  A TENS unit is a small box placed over the painful area that sends mild electrical pulses to nerves. *See* http://www.niams.nih.gov/Health_Info/Back_Pain/back_pain_ff.asp.

3.  A dorsal column stimulator is a surgically implanted device used to relieve pain by supplying a mild electric current to block nerve impulses in the spine. *See* https://medlineplus.gov/ency/article/007560.htm.

4.  Epidural injections for back pain typically involve the delivery of a steroid, a powerful anti-inflammatory medicine, directly into the space outside of the sac of fluid around the spinal cord. https://medlineplus.gov/ency/article/007485.htm.

5.  "Radiculopathy is a condition caused by compression, inflammation and/or injury to a spinal nerve root. Pressure on the nerve root results in pain, numbness, or a tingling sensation that travels or radiates to other areas of the body that are served by that nerve. Radiculopathy may occur when spinal stenosis or a herniated or ruptured disc compresses the nerve root." http://www.ninds.nih.gov/disorders/backpain/detail_backpain.htm.

ing his legs in bed. He has undergone four hernia repair surgeries because he uses abdominal muscles to compensate for his back problems. At times, he suffers debilitating side-effects from the many medications he takes in an attempt to control his pain, including memory and concentration problems, fatigue and swelling.

Israel filed applications for Disability Insurance Benefits and Supplemental Security Income benefits on October 30, 2007. His first hearing before an administrative law judge ("ALJ") resulted in a denial of his claims in February 2010. The Appeals Council vacated that ruling because it was not supported by substantial evidence. The Appeals Council directed the ALJ on remand to further evaluate Israel's residual functional capacity because the medical evidence was not consistent with the ALJ's finding that Israel could perform light work. The Council also directed the ALJ to further consider Israel's credibility because the reasons given for discrediting Israel's allegations of pain were contradicted by the record. The ALJ was further instructed to update the record with any new medical evidence; give further consideration to the opinions of Israel's treating doctor, nurse practitioner and examining occupational therapist; reevaluate Israel's subjective claims of pain; obtain expert medical opinion preferably from a pain management specialist; reconsider Israel's residual functional capacity; and obtain supplemental evidence from a vocational expert.

The same ALJ conducted a second hearing and again rejected Israel's claim in July 2011. The Appeals Council again vacated the decision and remanded for further proceedings, this time finding an error of law. Apparently, the ALJ held a video hearing at which she ordered the claimant to attend a post-hearing consulta-

tive medical examination. A little more than two weeks later, before Israel could attend the scheduled exam, the ALJ rejected his claim. Israel nevertheless kept the appointment and the next month, the ALJ issued an amended decision discussing the new consultative exam report and again rejecting Israel's claim. But there was no evidence that Israel had received the report or that he had waived his right to see it. Nor was there evidence that the ALJ provided the amended decision to Israel. On remand, the Appeals Council directed that the matter be assigned to a different ALJ; that the new ALJ proffer the consultative exam report to Israel; that the ALJ obtain additional evidence concerning Israel's impairments; that the ALJ reevaluate Israel's subjective complaints of pain; that the ALJ give further consideration to Israel's residual functional capacity; and that the ALJ again obtain evidence from a vocational expert to clarify the effect of Israel's assessed limitations on the occupational base.

A new ALJ held a third hearing and denied Israel's claim in April 2014. This time, the Appeals Council denied the request for review, and Israel filed this suit. In his brief in support of reversing the decision of the Commissioner, Israel sought a reversal without remand and an award of benefits. In the alternative, he requested that the court reverse the decision of the Commissioner and remand for a new hearing. In response, the Commissioner conceded that the decision was not supported by substantial evidence, and moved for remand in order to gather more evidence and conduct additional proceedings. The Commissioner contended that, although Israel produced evidence supporting his claim of disability, other evidence in the record could be construed to undermine his claim of disabling limitations. At that point, Israel opposed a remand, instead seeking an immediate award

of benefits. The district court concluded that, because the record did not compel a finding that Israel is disabled, the case should be remanded to the Agency for further proceedings. *Israel*, slip op. at 6–7.

The district court noted that there is ample evidence supporting Israel's claim that he is disabled, including the opinions of his treating physician Dr. Donald Harvey (a pain specialist) and his treating physician assistant, Ms. Dawn Nehls. *Id.* at 3–4. They opined that Israel could sit continuously for only one hour at a time and for a total of less than two hours in an eight-hour work day; that he could stand continuously for only fifteen minutes and could stand or walk for a total of less than two hours in a work day; that he could occasionally lift ten pounds or less and could never lift twenty pounds or more; that he would need to lie down for one to two hours during the work day in order to relieve pain and fatigue; that he needs to be able to shift positions at will; that he requires a cane; that he is not at all able to bend or twist at the waist; that he experiences constant interference with attention and concentration due to pain; that he is extremely limited in his ability to deal with the normal stresses of competitive employment; and that he would be absent from work more than three days per month. Their opinions were consistent with that of an examining occupational therapist, Mr. Bergthold, and a vocational expert opined that these limitations would preclude full-time employment.[6]

But the court noted that the evidence was not entirely one-sided. Two non-examining physicians, Pat Chen, M.D. and Laura Rosch, D.O., reviewed the record and concluded that Israel could frequently lift ten pounds, sit for six hours in an eight-

hour work day, and stand or walk for six hours in an eight hour work day, which would enable him to perform sedentary work under Social Security standards. The court also noted two MRI reports, from 2007 and 2010, that the court characterized as "inconsistent with Israel's disability claim" "on their face." *Israel*, slip op. at 5. The court acknowledged that the opinions of the non-treating physicians could not alone justify summarily rejecting the opinions of the treating physician, physician assistant and examining occupational therapist. Because the record contained medical evidence that supported a finding of disability and also included evidence that supported a contrary finding, the court was persuaded that remand was necessary to resolve the claim. Israel appeals.

## II.

■ The district court entered the remand order under its statutory authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Our review at this stage is very limited. "When the district court remands a case to the Social Security Administration for further proceedings, but declines to instruct the Commissioner to calculate and award benefits, we review the latter decision only for an abuse of discretion." *Allord v. Astrue*, 631 F.3d 411, 415–16 (7th Cir. 2011); *Nelson v. Apfel*, 210 F.3d 799, 801–02 (7th Cir. 2000). We will affirm the district court's judgment unless no reasonable person could agree with the decision. *Allord*, 631 F.3d at 416.

---

**6.** In its Decision and Order, the district court condensed the opinions of Dr. Harvey and Ms. Nehls. We include a more complete outline of the medical source opinions, which can be found at pages 589–97 of the Administrative Record (hereafter "A.R.").

Israel contends that the court abused its discretion in ordering the remand for a fourth administrative hearing rather than awarding benefits outright. He argues that the record contains ample evidence supporting a finding of disability and no evidence that provides a reasonable basis to discredit that conclusion. Israel maintains that the opinions of two non-treating physicians cannot overcome the well-documented opinions of his treating health care providers. Nor can an MRI alone discredit his subjective claim of disabling pain because objective medical tests such as x-rays and MRIs cannot establish the intensity of a person's pain, he contends. The Commissioner responds that the opinions of the non-treating physicians in combination with the MRI results, physical examination results and the opinion of a consulting physician, Dr. Ayaz Samadani, could warrant discounting the opinions of the treating physician and other providers, and that there are factual issues that must be resolved. Because the record evidence is mixed, the Commissioner contends that remand for further proceedings was a reasonable decision.

■■■ Israel is correct that a "treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). *See also Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (regulations require that the ALJ give the opinions of a treating physician controlling weight as long as they are supported by medical findings and consistent with substantial evidence in the record); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (same). We give more weight to the opinions of treating physicians because they are most familiar with the claimant's con-

ditions and circumstances. *Gudgel*, 345 F.3d at 470. An ALJ must offer good reasons for discounting the opinion of a treating physician. *Moore*, 743 F.3d at 1127. *See also Gudgel*, 345 F.3d at 470 (an ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record). A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician. *Gudgel*, 345 F.3d at 470. *See also Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (an ALJ must provide a valid explanation for preferring a record reviewer's analysis over that of an examining doctor).

In the district court, the Commissioner conceded that the ALJ failed to adequately evaluate the opinion from the treating source, Dr. Harvey, a pain specialist, and his physician assistant, Ms. Nehls. The Commissioner further admitted that the reasons given by the ALJ for assigning little weight to the opinions of Dr. Harvey and Ms. Nehls were "insufficient," and that the ALJ had also failed to adequately evaluate the opinion of the examining occupational therapist, Mr. Bergthold, whose assessment was consistent with the opinions of the treating providers. The Commissioner also agreed below and agrees on appeal that the opinions of Dr. Harvey, Ms. Nehls and Mr. Bergthold support a finding of disability. But the Commissioner nonetheless contends that the opinions of other medical sources provide evidence that would support a contrary result.

Given that the Agency has conceded that Israel has produced substantial evidence of disability, we turn to the evidence that the Commissioner asserts could undermine that conclusion. The Commissioner relies in part on the opinions of the non-treating physicians, Drs. Chen and Rosch, as well as the opinion of the consultative examin-

ing physician, Dr. Samadani. The ALJ did not mention or rely upon the opinions of Drs. Chen and Rosch, and the Commissioner does not explain why these opinions are entitled to any weight let alone more weight than that of the treating physician. *See Gudgel*, 345 F.3d at 470; *Beardsley*, 758 F.3d at 839. Moreover, we note that Israel's treating physician is a specialist in the area of pain management, and the non-examining opinions came from internists with no special training or expertise as to pain. Social Security regulations specify that particular weight be given to the opinions of specialists related to their areas of expertise. 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). That is not to say that an ALJ could not give any weight to the opinions of the non-treating physicians; to date, however, the ALJ has not explained the value of the non-treating physician opinions, if any.

Although Drs. Chen and Rosch concluded that Israel was capable of performing light work,[7] Dr. Samadani did not offer a definitive opinion on Israel's ability to work. Instead, Dr. Samadani opined that Israel suffered from post-laminectomy lower back pain and left lumbar radiculopathy, diagnoses consistent with the opinions of his treating providers. In a paragraph titled "Ability to Perform Work Functions," Dr. Samadani said only that Israel has "subjective limitations as described," but was able to "sit, stand, walk, handle objects, see, hear, speak, and travel. He required help in ambulation. He was walking with the cane. He was slow in his walking pace and complained of constant pain in the lower back." A.R. at 656. As for

the "subjective limitations," Dr. Samadani noted earlier in his report that Israel complained of constant pain that is between 8 and 9 on a 0-to-10 scale; that he had reported that all of his activities are restricted by his pain; that he cannot drive a car and needs help putting on his shoes and dressing; that his gait and station were stable but he was "uncertain to convert regular walking to tandem walk;" that he leaned to the side and was afraid of falling due to his lower back pain; and that bending down or lifting his legs when sitting or lying down caused pain in his lower back. A.R. at 654–55. Consistent with Dr. Samadani's report, the ALJ who conducted the third hearing observed that Israel "appeared overweight and seriously deconditioned, relied heavily on a cane to ambulate, and alternated between sitting and standing during the proceedings." A.R. at 25.

The Commissioner argues on appeal that Dr. Samadani's opinion could be read to support a finding that Israel is not disabled because the report implies that only Israel's ability to walk is impaired. Regulations require consulting doctors to report what an individual can do despite his or her impairments, the Commissioner asserts, and so Dr. Samadani arguably would have reported additional functional limitations if he determined that Israel had them. We first note that the district court did not rely on Dr. Samadani's opinion in ordering a remand, and it would be difficult to judge whether the court abused its discretion based on evidence that the court admittedly did not consider. Nevertheless, the Commissioner's reading of Dr. Samadani's opinion is quite a stretch when reading the report as a whole. First, Dr. Samadani acknowledged but did not fully list

---

7. The third ALJ found that Israel's condition had declined after the agency doctor opined that he could perform light work. The ALJ determined that Israel was "further deconditioned to the point he would now be limited to sedentary types of activity." A.R. at 26.

"subjective limitations as described," so we may equally assume that Israel has functional limitations not expressly included in the report. Second, the Commissioner largely relies on the *absence* of information in Dr. Samadani's report to establish facts, when the regulations do not require that a consulting physician report all limitations to the ALJ. *See Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (ultimate responsibility for determining a claimant's residual functional capacity rests on the ALJ and not on an examining doctor). Moreover, nothing in Dr. Samadani's report is inconsistent with the opinions of Dr. Harvey and Ms. Nehls. And finally, Dr. Samadani's report fails to gauge the duration or frequency of Israel's limitations or abilities, rendering his opinion too vague and incomplete to be of much use in assessing Israel's overall limitations.

The ALJ who denied Israel's claim after the third hearing discounted the opinions of Dr. Harvey and Ms. Nehls because their functional assessment of Israel "clearly overstated overall limitations." A.R. at 25. As an example of the overstatement, the ALJ cited what he characterized as a claim in the assessment that Israel has **"little to no use** of his hands/fingers," a finding that the ALJ asserted was unsupported in the record. A.R. at 25. But the ALJ had misread the functional assessment: Dr. Harvey and Ms. Nehls had said the exact opposite of this, indicating instead that Israel had **full use** of his hands and fingers. The assessment asked whether the patient had "significant limitations in the ability to use hands and fingers for actions in a competitive job." A.R. at 597. Ms. Nehls (joined by Dr. Harvey) checked the "no" box eight times, for "grasp, twist," "turn objects," "fine manipulation," and

"reaching, including overhead," for both right and left hands. A.R. at 597. Those responses indicated **no significant limitations** in those areas. But the ALJ's misreading of the response caused him to believe that Ms. Nehls and Dr. Harvey had exaggerated Israel's limitations. Perhaps that is why the Commissioner agreed in the district court that the reasons given to discount the opinions of the treating providers were "insufficient," an understatement given the nature of the error.

The Commissioner also maintains that the MRI results in combination with the opinions of the non-treating internists could support a finding that Israel is not disabled, if the opinions of non-treating physicians are insufficient by themselves to overcome the well-supported opinion of the treating doctor. So we turn to the MRI reports. Without citing any medical opinion to this effect, the district court characterized the 2007 and 2010 MRIs as inconsistent on their face with Israel's claim of disability. There is always a danger when lawyers and judges attempt to interpret medical reports and that peril is laid bare here. *See Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor"). In noting the so-called inconsistency, the district court cited a 2010 letter from Israel's lawyer as characterizing his primary impairment as "degenerative disc disease, particularly at L4–S1 vertebrate, and hernias." *Israel*, slip op. at 5. The letter cited actually says that Israel "alleges disability due to degenerative disc disease with degenerative changes at L5–S1, status post diskectomy, laminectomy, and fusion; L4–5 disc bulging; and history of repair of multiple hernia defects." A.R. at 449.[8] First, the district court incorrectly

---

**8.** Israel's lawyer later clarified at the hearing that Israel had undergone a laminectomy and diskectomy but not a fusion procedure.

noted the location of the claimed degenerative disk changes. Second, at the risk of making the same mistake the district court made, the 2007 MRI report appears consistent, at least in part, with Israel's claims:

> There are degenerative endplate changes noted at L5–S1, this is the level of prior left hemilaminectomy/diskectomy. **Degenerative disk disease is present at this level** but there is only mild broad-based disk bulging and probable mild scar tissue/fibrosis creating very minimal mass effect/stenosis. The left S1 nerve root remains mildly enlarged with a probable mild element of stenosis.

A.R. at 520. As for L4–5, the 2007 MRI reports a "very mild element of broad-based disk bulging" that had decreased since a 2005 MRI, "a minor element of ligamentum flavum thickening and mild posterior facet sclerosis," as well as "minimal overall spinal stenosis," and "no major neural foraminal narrowing." A.R. at 519. The 2007 MRI seemingly supports Israel's claim of degenerative disk disease. Similarly, the 2010 MRI notes "[s]table minimal broad-based disk bulging" at L4–5 "with associated minimal facet osteoarthritis and ligamentum flavum hypertrophy." A.R. at 651. At L5–S1, the 2010 report indicated, "[m]ild stable broad-based disk bulging and endplate marrow signal change . . . with stable post-operative changes of a left L5 laminectomy. Findings result in minimal effacement of the anterior thecal sac. There is stable minimal bilateral neural foraminal narrowing." A.R. at 651. Because no physician in the record has opined on whether these results are consistent with Israel's claim of disabling pain, and because the reports are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim. Israel's treating physician was aware of these results and apparently

did not find them inconsistent with Israel's subjective report of disabling pain. On remand, these records should be reviewed by a physician to determine whether they are in fact consistent with Israel's claim of disability.

◼ But even if a physician determines that the MRIs do not support a subjective claim of pain, we have repeatedly stated that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016) (quoting *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015)); *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (noting the recurrent error in decisions of Social Security ALJs of discounting pain testimony that can't be attributed to "objective" injuries or illnesses that can be revealed by x-rays, and collecting cases). *See also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (an ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record). "If the medical record does not corroborate the level of pain reported by the claimant, the ALJ must develop the record and seek information about the severity of the pain and its effects on the applicant." *Moss*, 555 F.3d at 561. And the district court itself, after first claiming the MRI reports to be inconsistent with Israel's claim, noted that a medical source's opinion was required "to assess the extent, if any, to which this medical evidence is inconsistent with the alleged disability." *Israel*, slip op. at 6. The Commissioner cites no such opinion, despite the repeated orders of the Appeals Council that the reviewing ALJ should seek *additional medical evidence to clarify*

the nature and severity of Israel's impairments.

So the opinions of the non-treating generalists may not generally overcome those of the treating specialist unless the specialist's opinions are inconsistent with substantial record evidence. And the MRIs alone are insufficient to allow an ALJ to discount the claimant's subjective claim of disabling pain, especially because the MRIs have not been characterized by any medical source as inconsistent with Israel's claim of disabling pain. Dr. Samadani's opinion adds little to the calculus because he failed to take a definitive stance on the key issue of Israel's abilities to perform tasks essential to work and to his capacity to persist in those tasks in a manner that would allow him to hold full-time employment.

Israel has a lengthy medical history that begins with a specific injury, continues through a failed surgery resulting in a diagnosis consistent with persistent pain (a diagnosis affirmed by Dr. Samadani, the State's own doctor), and proceeds through a lengthy series of failed attempts to control Israel's pain. Israel has undergone painful and risky procedures in attempts to alleviate his pain, actions that would seem to support the credibility of his claims regarding the severity of his pain. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (noting the improbability that a claimant would have undergone extensive pain-treatment procedures that included not only heavy doses of strong drugs but also the surgical implantation in her spine of a spinal-cord stimulator, "merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits"). Yet the last ALJ to assess his claims found him "not entirely credible," "somewhat credible," and "partially credible," vague findings based largely on docu-

mented misunderstandings of the record. *See Moss*, 555 F.3d at 561 (we will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence).

█ Although Israel presents a strong claim for an award of benefits, we cannot say that the district court abused its discretion in remanding. The ALJ failed to gather the evidence to make the findings necessary to resolve the ultimate question of whether Israel's pain disables him from working. Israel has presented substantial evidence which can be read in favor of an award of benefits, but the record also includes some evidence that could be read to undermine his claim, including the opinions of two non-treating internists, MRI results that have yet to be interpreted by a competent medical source, the incomplete opinion of a State doctor, and physical examination findings over the years that present an unclear picture of the effectiveness of various treatments for his persistent pain. Because of these uncertainties in the record, we must conclude that the district court did not abuse its discretion in remanding for a fourth hearing.

Israel's patience has understandably grown thin. We agree that it should not take nine years to determine whether a claimant's impairments prevent him from engaging in full-time employment, especially a claimant who appears to have a well-documented and well-supported claim for disability. Israel believes he is entitled to a directed award of benefits at this stage, citing *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998). But the record in this case is not as severely lopsided as it was in *Wilder*, and we do not perceive the same level of obduracy on the part of the Agency. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) ("Another remand for further proceedings was un-

necessary in. *Wilder* because after two evidentiary hearings, the ALJ had no reasonable grounds to reject the claimant's claim."). "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. If the case returns to this court with the Agency seeking a fifth hearing, our analysis may change. After this remand, the Agency may not simply persist in pointing to unexplained MRI results or non-treating physician opinions as undermining Israel's claim. If the Agency again rejects Israel's claim, it must provide a logical basis, supported in the record, to disregard the well-founded opinions of Israel's treating physician, physician assistant, and the independent occupational therapist, not to mention the extensive history of procedures and treatments Israel has endured and his own testimony regarding the severity of his pain. We strongly encourage the Agency to expedite the proceedings in order to resolve Israel's claims once and for all.

AFFIRMED.